JAMES H. GROUT, Respondent, v. CENTRAL ELECTRIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 3, 1907.

1. **STREET RAILROADS: Negligence: Excessive Speed: Busy Thoroughfare.** To run a car at a high speed along a street in a populated part of a city without reducing the rate at street intersections, is not only negligent, but reckless. In such districts, and especially while approaching crossings, the operators of street cars should keep them under reasonable control.

2. ———: ———: ———: **Contributory Negligence.** Where a traveler on reaching the north line of a street in a southward

journey, with cursory glance observes a rapidly approaching car at the street crossing to the west, and without further attention or observation drives across the tracks and is struck by such car, he is guilty of contributory negligence.

3. ——: ——: ——: ——: **Humanitarian Doctrine: Pleading.** A petition averred that the operators of a street car could have seen plaintiff's position of peril in time to have slackened the speed, etc., had the said trainmen been operating and running said car at a reasonable rate of speed, etc. The evidence showed the speed was negligent and that plaintiff was guilty of contributory negligence. *Held*, that under the pleading there was no room for the application of the humanitarian doctrine, since that rule deals with the actual facts of a present situation and has no concern with the question of what might have been under different conditions, and the averments of the petition restricting the scope of the action to the excessive speed, failed to state a cause of action predicated on a violation of humanitarian duty.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *Frank G. Johnson* for appellant.

(1) The court erred in submitting the cause to the jury. The evidence conclusively establishes the contributory negligence of the plaintiff, and the court should have so declared as a matter of law. Watson v. Railway, 133 Mo. 246; Moore v. Railway, 176 Mo. 246; Cogan v. Railway, 101 Mo. App. 179; Fanning v. Railway, 103 Mo. App. 151; Burris v. Transit Co., 102 Mo. App. 87; Felling v. Railway, 106 Mo. App. 162; Deane v. Transit Co., 192 Mo. 575; Walker v. Railway, 193 Mo. 453; Schmidt v. Railway, 191 Mo. 215; Sanguinette v. Railway, 95 S. W. 386; Roenfeldt v. Railway, 180 Mo. 564; Guyer v. Railway, 174 Mo. 344; Petty v. Railway, 179 Mo. 666. (2) The court erred in giving instructions for the plaintiff. They both ignored and enlarged the issues tendered by the pleadings, were unsupported by the evidence, contradictory and misleading. Number 1. Ignores issues tendered by pleadings. Thomas

v. Babb, 45 Mo. 386; Barrie v. Transit Co., 102 Mo. App. 93, 4. Assumes controverted facts. Vannatta v. Railroad, 133 Mo. 21. Number 2. Ignores issues. Barrie v. Transit Co., 102 Mo. App. 93; Rice v. Wabash, 92 Mo. l. c. 40; McDonald v. Railroad, 32 Mo. App. 75; Wilburn v. Railroad, 36 Mo. App. 209, 12. Number 4. No evidence to warrant same. Brazis v. Transit Co., 102 Mo. App. 228; Hartpence v. Rogers, 143 Mo. 634; McGonigle v. Daugherty, 71 Mo. 261. Number 3. Misleading. Clark v. Kitchen, 52 Mo. 316; Prince v. Compress Co., 112 Mo. App. 66; James v. Railroad, 107 Mo. 484. Number 5.—Misleading. James v. Railroad, 107 Mo. 484; Higgins v. Railroad, 95 S. W. 866; Vannatta v. Railroad, 133 S. W. 34. Number 7. (a) Substitutes an entirely different cause of action. McQuillin's Instructions, page 51. (b) Conflicting and contradictory of other instructions. Stevenson v. Hancock, 72 Mo. 612; Price v. Railroad, 77 Mo. 512; Wilmot v. Railroad, 106 Mo. 549. (c) No evidence on which to base same. No citations. (d) Ignores contributory negligence. No citations. No. 8 (a) Ignores defendant's theory. Kolb v. Transit Co., 102 Mo. App. 151; Culbertson v. Railroad, 140 Mo. 60. (b) Unsupported by Evidence. No citations. (c) Conflicting and contradictory. Spillane v. Railroad, 111 Mo. 565; Fath v. Railroad, 105 Mo. 549. (d) Misleading. Shoe Co. v. Shepherd, 96 Mo. App. 702.

*Rozzelle, Vineyard & Thacher* for respondent.

(1) The court did not err in overruling defendants demurrer to the evidence. Cole v. Railway, Mo. Court Reporter, vol. 1, number 6, p. 220; Latson v. Transit Co., 192 Mo. 458; Rectenwald v. Railway, Mo. Court Reporter, vol. 1, number 6, p. 223; Meng v. Railroad, 108 Mo. App. 553. (2) The instructions asked by plaintiff and given by the court are correct declarations of the law. Instruction number 1: Kleiber v. Railroad, 107 Mo. 247.

Instruction number 2: Heinzle v. Railroad, 182 Mo. 547. Instruction number 3: Railroad v. Gallagher, 68 Kas. 428; Meng v. Railroad, 108 Mo. App. 553. Instruction number 4: Britton v. St. Louis, 120 Mo. 446; State v. Hilsabeck, 132 Mo. 348; Hartpence v. Rogers, 143 Mo. 634. Instruction number 7: Guenther v. Railroad, 108 Mo. 21; Bindbeutel v. Railway, 43 Mo. App. 463-476; Cole v. Railway, Mo. Court Reporter, vol. 1, number 6, p. 220; Rectenwald v. Railway Mo. Court Reporter, vol. 1, number 6, p. 223; Instruction number 8: Guenther v. Railroad, 108 Mo. 21.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff recovered judgment in the sum of one thousand dollars and the case is here on defendant's appeal. The injury occurred at the intersection of Tenth street and Tracy avenue in Kansas City at about noon on August 21, 1902. The course of Tenth street is east and west and that of Tracy avenue north and south. The former street is sixty feet wide, and at the time in question, defendant was operating thereon a double-track line of street railway. The cars in use were propelled by electricity and were provided with handbrakes only.

Plaintiff and a companion were driving south on Tracy avenue in a light spring wagon drawn by one horse. When they reached the north property line on Tenth street, they looked in both directions for cars, saw none approaching from the east and observed one coming from the west on the south track. The day was clear and there was nothing to obstruct the view, but the look given by plaintiff to the approaching car was of the most cursory character. He observed that it was about at the intersection of Forest avenue, the next street west, and that it was not going to stop at that crossing, but did not perceive that it was approaching

at high speed and assuming that he had time to clear the crossing in safety, paid no further attention to it and did not know of his danger until an exclamation from his companion warned him that a collision was imminent. At that moment, his horse was on the south track, and plaintiff says he looked up and observed the car coming at very high speed—estimated by him at forty miles per hour. He endeavored to clear the crossing by urging the horse, then going at a slow trot, into a faster gait; but his efforts were unavailing and the collision followed. The car struck the rear wheels of the wagon and plaintiff was precipitated to the street with great violence, and sustained severe injuries. The distance between Forest and Tracy avenues is three hundred and fifteen feet, and the rate of speed maintained by the car in traversing it is variously estimated by the witnesses for plaintiff at from fifteen to forty miles per hour. From their testimony, it appears that no effort was made by the motorman to check speed, until the collision occurred.

The negligence charged in the petition is that the defendant "negligently, carelessly and unskillfully and without warning to plaintiff, ran said car upon and and against a certain wagon at the time being driven by plaintiff and upon which wagon plaintiff was at the time seated, and brought said car into collision with said wagon with great force and violence, causing plaintiff to be thrown from the seat to the hard pavement below, causing him severe and permanent injuries. . . . that the place where the collision occurred is a portion of Kansas City thickly populated, where many pedestrians and vehicles are constantly passing to and fro, and especially at the time of day when the collision occurred. . . .that the grade of Tenth street beginning at a point about one hundred feet east of its intersection with Forest avenue, changes and forms a steep incline running down to Tracy

avenue; that the defendant . . . . was at the time running the car at a high, unreasonable and dangerous rate of speed under the particular circumstances in question; that the defendant . . saw, or by the exercise of ordinary care and diligence could have seen the plaintiff in a position of imminent peril upon, approaching and in close proximity to the track upon which said car was running in time to have slackened the speed of said car or to have stopped the same and thus prevented the collision and consequent injuries to plaintiff, had the defendant . . . been operating and running said car at a reasonable rate of speed under the particular circumstances in question, and had the said defendant. . . . exercised ordinary care and diligence to see the plaintiff in his position of imminent peril, but that the defendant. . . operating said car, as aforesaid, negligently, carelessly and unskillfully ran and operated said car at a dangerous and unreasonable rate of speed under the particular circumstances, and negligently, carelessly and unskillfully failed and neglected to slacken the speed of said car or to bring the same to a stop and prevent said collision and injuries; that by reason of the carelessness and negligence of defendant. . . . plaintiff was thrown from the wagon which he was driving," etc. The answer, in addition to a general denial, contains a plea of contributory negligence.

The evidence of defendant tends to show that in running from Forest avenue to Tracy avenue, the speed of the car did not exceed ten or eleven miles per hour, that as the crossing in question was neared, the motorman rang the bell and, when he saw plaintiff approaching the track, rang it more violently to attract his attention; that plaintiff, who appeared to be absorbed in conversation with his companion, then looked up, observed the car, checked the horse as though to stop, and then, apparently changing his mind, urged the horse for-

ward in an effort to cross ahead of the car; that on ob-
serving this conduct of plaintiff, the motorman applied
the brakes with all possible celerity and succeeded in
checking the speed of the car, but by his utmost efforts,
could not avoid the collision. At the conclusion of the
evidence, defendant requested the court to peremptorily
direct a verdict in its favor and now complains that er-
ror was committed in the denial of its request.

Adopting, as we must, the statement of facts most
favorable to the cause of action asserted, it is apparent
that the manner in which the car was being operated to-
wards the crossing in question was negligent. To run
a car at a rate of speed so high along a street in a pop-
ulous part of the city, without reducing speed at street
intersections, is not only negligence but is a wantonly
reckless act. The supreme and appellate courts of the
State have declared repeatedly that street railway com-
panies in the operation of their cars on the public thor-
oughfares possess no superior rights to those which the
occupants of other vehicles, or pedestrians, may exer-
cise. The very act of running a car on a busy thorough-
fare at an excessive rate of speed—that is to say, so fast
that it cannot be reasonably controlled by its operator—
is, in itself, an assertion of a paramount right to the
use of the street. It is the duty of the operators of a
car to keep it under reasonable control while passing
through well-populated districts, and especially while
approaching street crossings where they have every rea-
son to anticipate the presence of others whose right to
the enjoyment of the street is equal to their own.

That plaintiff, under the evidence adduced by him,
was imperiled by the reckless conduct of the trainmen is
indisputable, and we come to the inquiry whether his
own conduct was such that, in law, he must be said to
have been guilty of negligence which directly contrib-
uted to place him in his perilous position. With full
opportunity to observe the car, and with nothing before

or around him to distract his attention, it is inconceivable that he could have reached the place of danger except by aid of his own negligence. He says that when he glanced at it, he had no reason to think the car, if operated with reasonable care, could menace his safety, and it is argued that he had the right to presume that the trainmen would not negligently run it at an excessive rate of speed. He was justified in indulging in this presumption, but, as we have recently declared in a number of cases, this did not absolve him from the performance of the duty of attending to his own safety. He had no right to rely solely on a presumption, but should have used his senses to acquaint himself with the actual circumstances open to his observation, and had he done this, it is very clear, he would not have entered into danger. Had he looked at the car with any degree of attentiveness, he could have seen that it was coming at a high rate of speed, and had he looked again before entering the sphere of danger, he would have known that it was highly dangerous for him to attempt to cross. The thing that brands his conduct as censurable in law is the fact that with the car in striking distance, and with every opportunity to protect himself, he blindly risked his life and limb on a mere presumption that others would be more careful than he. The case is very similar in its essential features to Cole v. Railway, 121 Mo. App. 605, 97 S. W. 555, recently decided by this court, and we refer to the opinion in that case for a further expression of our views.

We must hold, as a matter of law, that the negligence of plaintiff directly contributed to place him in danger, and it follows that he cannot maintain an action founded on the negligence of defendant which likewise served as a producing cause of his danger; and, unless it reasonably may be inferred from the facts in evidence that after his perilous position had become, or should have become apparent to the motorman, the lat-

ter, in the exercise of reasonable care could have stopped the car or checked its speed and thereby averted the injury, we must further hold that he is entirely without a cause of action. The motorman admits that he saw plaintiff before the latter had entered the sphere of danger and observed that he was negligently advancing to the crossing, oblivious to the imminent danger confronting him. Realizing the gravity of the situation, the motorman claims he immediately redoubled his efforts to warn plaintiff, and employed the means at hand to check the speed of the car. On the other hand, the evidence of plaintiff tends to show that the motorman made no effort to reduce speed, and that had a proper effort been exerted, the injury would have been avoided. This conflict presents an issue of fact which, if resolved by the triers of fact in favor of the contention of plaintiff, would sustain a cause of action founded on a breach of the humanitarian duty imposed by law on defendant not to knowingly inflict an injury when, it possessed the means and opportunity of avoiding it by the exercise of reasonable care.

Turning now to the petition, we find that the only cause of action which the evidence discloses might have been successfully maintained by plaintiff is not pleaded. The pleader alleges no other cause than one based on the negligent act of running a car at a dangerously excessive rate of speed. True, he charges that the trainmen "saw, or by the exercise of ordinary care and diligence, could have seen plaintiff in a position of imminent peril upon, approaching and in close proximity to the track upon which said car was running, in time to have slackened the speed of said car and to have stopped the same and thus prevented the collision and consequent injuries to the plaintiff, *had the said trainmen been operating and running said car at a reasonable rate of speed under the particular circumstances.*" But this is not an allegation of a negligent breach of the humanitarian duty.

The effort which a humane man would employ in a given situation to avoid the infliction of an injury upon his fellow does not spring from any consideration of the causes that brought that situation into being. The humane motive is not prompted nor affected by thought of who may be to blame for the existence of danger. It takes into account the facts only that one is endangered and that injury may be presented by the exercise of reasonable care. The law justly imposes on the operators of powerful vehicles the duty of observing that degree of solicitude and care for the safety of others that an ordinarily humane person in their situation would treat as a self-imposed duty, and a failure to properly perform such duty is negligence. But a negligent act of this character is one thing, and a negligent act which aids in the production of a perilous situation is another and entirely different thing. As to the former, there can be no such thing as contributory negligence, since, however foolhardy the endangered person may have been in plunging heedlessly into the toils, his negligence gives to the operators of the car no license to injure him, nor will they be heard to offer it as an excuse for their failure to do all that reasonably would have been expected of an ordinarily humane person in their situation. Their negligence occupies the whole field or culpability to the exclusion of all other acts of negligence and presents itself as the sole producing cause of the resultant injury. [Ross v. Railway, 113 Mo. App. 605.] It cannot be regarded as being co-operative with the negligent acts which provided the condition of peril. As to the latter class of acts, the contributory negligence of the one endangered stands on the same footing with the negligence of the operators of the vehicle. In a sense, both parties may be considered as being *in pari delicto* and because both are guilty of the same kind of wrong, the one injured cannot have any right of action

against his fellow wrongdoer. Of this character of negligence was the act of defendant in running the car at a dangerously high rate of speed and any cause of action attempted to be founded on that act, necessarily must fail because of the presence of the contributory negligence of plaintiff. The only reasonable inference to be drawn from the averments of the petition is that the motorman could have prevented the injury by stopping the car or checking its speed had it been operated at a reasonably careful rate of speed, but could not avoid the injury on account of the excessively high speed at which it was going. As we have just shown, the humanitarian duty deals only with the actual facts of a present situation, and has no concern with the question of what might have been done under different conditions. In thus restricting the scope of the cause pleaded, the averments of the petition fail to state a cause of action predicated on a violation of the humanitarian duty, and because of this omission, the learned trial judge erred in refusing to sustain the demurrer to the evidence. It follows that the judgment must be reversed and the cause remanded. All concur.