MISSOURI, K. & T. RY. CO. OF TEXAS v. TROCHTA et al.  (No. 5529.)

(Court of Civil Appeals of Texas. Austin. Dec. 8, 1915. Rehearing Denied Jan. 12, 1916.)

1. RAILROADS ⊜⇒316 — CROSSING ACCIDENT— SPEED OF TRAIN—NEGLIGENCE.

Running a passenger train at the rate of 30 to 35 miles an hour does not constitute negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1006–1008, 1011, 1012; Dec. Dig. ⊜⇒316.]

2. RAILROADS ⊜⇒314—HIGHWAY CROSSING— TREES OBSTRUCTING VIEW—NEGLIGENCE.

Where trees grew so thickly on defendant railroad's right of way at a highway crossing as to obscure the view of approaching trains by travelers, defendant was not guilty of negligence by permitting such obscuration where all the

trees except two small ones, which in themselves would not obscure the view, grew on the land of another adjoining the right of way, since defendant had no right to remove the trees from such adjacent land.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 965; Dec. Dig. ☞314.]

3. RAILROADS ☞320 — HIGHWAY CROSSING— AVOIDING COLLISION—CHOICE OF METHODS —NEGLIGENCE.

Where the engineer of defendant's train saw deceased driving upon a highway crossing while the engine was 100 yards· distant, and was compelled, in order to make the best effort to avoid a collision, to choose instantly, without time to reason as to which was the better method, between reversing the engine under the emergency brake and with sanded track, or blowing the whistle to warn deceased, who probably could have stopped his team short of the track, the engineer being unable to do both, his conduct in choosing the method of attempting to check the train was not negligence, though the event showed that he chose the less efficient method.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1014–1016, 1019; Dec. Dig. ☞ 320.]

4. RAILROADS ☞328—HIGHWAY CROSSING— COLLISION—CONTRIBUTORY NEGLIGENCE.

Where deceased drove his wagon onto defendant's railroad track at a highway crossing without looking or listening, when an approaching train was about 100 yards distant, he being familiar with the crossing by having driven over it frequently for 13 years, his wagon being empty and making considerable noise at the time, the effect of which as drowning the noise of the train he could have obviated by stopping and listening before going on the crossing, and though the view of the track was obscured at one point, he could have seen an approaching train for long distances from other points in his line of approach, the accident happening in daylight, and he having no reason to suppose that a train would not cross at the time and place in question, he was guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1057–1070; Dec. Dig. ☞328.]

Appeal from District. Court, Williamson County; C. A. Wilcox, Judge.

Action by Marie Trochta and others against the Missouri, Kansas & Texas Railway Company of Texas. Judgment.for plaintiffs, and defendant appeals. Reversed and remanded.

Wilcox & Graves, of Georgetown, and Spell & Sanford, of Waco, for appellant.    A. E. Wood, of Granger, and Bryan, Stone & Wade, of Ft. Worth, for appellees.

## Findings of Fact.

JENKINS, J.    This is a suit to recover damages on account of the death of Jos. Trochta, occasioned by the alleged negligence of appellant.    The case'was submitted to the jury upon special issues, which, together with the jury's answers, are as follows:

"Question No. 1. On the 13th day of August, 1913, as the defendant's west-bound passenger train was approaching the public road crossing where the said Joseph Trochta was killed, did the engineer in charge of said engine cause the whistle on the engine to be sounded at least eighty rods before reaching said crossing?    A. No.

"Question No. 2. If you have answered the foregoing question in the negative, then answer this question:    Was the failure (if any) to sound said whistle the direct cause of the collision, and consequent death of said Trochta?    A. Yes.

"Question No. 3. Upon said occasion did the employés in charge of said engine ring the bell upon said engine from a point at least 80 rods from said crossing continuously until such crossing was reached?    A. Yes.

"Question No. 4. If you have answered the preceding question in the negative, then answer this question:    Was the failure (if any) to ring said bell the direct cause of the collision, and consequent death of said Trochta?    No answer.

"Question No. 5. Upon said occasion, as said train was approaching said crossing, was said train running at an unreasonable and dangerous rate of speed?    A. Yes.

"Question No. 6. If you answer the preceding question in the affirmative, then state whether the running of said train at such rate of speed (if it was so run) constituted negligence on the part of the defendant, as the term negligence has been hereinabove defined?    A. Yes.

"Question No. 7. If you have answered the two preceding questions in the affirmative, then answer this question:    Was the speed of said train the direct cause of the collision. and consequent death of said Trochta?    A. Yes.

"Question No. 8. Prior to and at the time of the death of the said Trochta, did the defendant permit branches of trees growing upon the right of way to extend over the north boundary line of its right of way, and east of the crossing?    A. Yes.

"Question No. 9. If you have answered the preceding question in the affirmative, then answer this question:    Did the permitting of branches of such trees to extend over the right of way constitute negligence on the part of the defendant?    A. Yes.

"Question No. 10. If you have answered the two preceding questions in the affirmative, then answer this question:    Was the fact (if it was a fact) that branches of trees extended over the right of way of the defendant the direct cause of the collision, and subsequent death of said Trochta?    A. Yes.

"Question No. 11. Did the employés in charge of the engine drawing said train, when said engine was within about 100 yards of said crossing, see the said Trochta driving upon said crossing?    A. Yes.

"Question No. 12. If you have answered the preceding question in the affirmative, then did the engineer in charge of said engine realize the danger of said Trochta?    A. Yes.

"Question No. 13. If you have answered the two preceding questions in the affirmative, then answer this question:    Was the engineer in charge of said engine guilty of negligence in failing to sound the whistle of said engine upon said discovery of said Trochta's position?    A. Yes.

"Question No. 14. Was the failure of the engineer to sound said whistle at such time the direct cause of the collision, and consequent death of said Trochta?    A. Yes.

"Question No. 15. If you have answered question No. 11 in the negative, then answer this question:    Were the employés in charge of said engine guilty of negligence in failing (if they did fail) to see said Trochta while said engine was at a point about 100 yards east of the crossing?    No answer.

"Question No. 16. If you have answered the preceding question in the affirmative, then answer this question:    Was the failure (if any) of the employés in charge of said engine to see said Trochta at a point 100 yards east of said crossing the direct cause of the collision, and consequent death of the said·Trochta?    No answer.

"Question No. 17. You are instructed that if,

under the law and the facts of this case, the plaintiff should be entitled to recover damages against the defendant company, then the measure of such damages would be such sum as, if paid to them in cash at this time, would reasonably compensate them for the pecuniary loss (if any) which the said plaintiffs have sustained by reason of the death of said Trochta; and, in assessing the damages (if any) to which said Franciska Trochta would be entitled, you should take into consideration the reasonable pecuniary value (if any) of the nurture, care, and admonition which the said Franciska Trochta would have received from her father during her minority, had he lived. But you are further instructed that in assessing such damages you cannot take into consideration any grief or sorrow on account of the death of said Joseph Trochta, or loss of his society, affection, or companionship. You are further instructed that you will apportion the damages (if any) between the plaintiffs Marie and Franciska Trochta in such proportions as you may find to be just and fair. Now, bearing in mind the above instructions, you will answer these questions: (a) What amount of pecuniary loss (if any) has been sustained by the plaintiff Mrs. Marie Trochta by reason of the death of the said Joseph Trochta? A. $4,000. (b) What amount of pecuniary loss (if any) has been sustained by the plaintiff Franciska Trochta by reason of the death of the said Joseph Trochta? A. $3,000.

"Question No. 18. Did the said Joseph Trochta before driving upon the crossing, upon the occasion of the collision with said train, look or listen or do any act in order to discover whether or not the train was approaching said crossing? A. No.

"Question No. 19. If you have answered the preceding question in the negative, then answer this question: Did the failure of said Trochta to endeavor to discover whether or not a train was approaching said crossing (if he did so fail) constitute negligence on the part of said Trochta? A. No.

"Question No. 20. If you have answered the preceding question in the affirmative, then state whether such negligence (if any) on the part of said Trochta caused or assisted in causing the collision which resulted in his death? Not answered."

The evidence is sufficient to sustain the findings of the jury as to questions Nos. 1, 2, 3, 7, 8, 11, 12, 17, and 18, and we adopt said questions and answers as our findings of fact herein. Our reasons for not adopting the remaining questions and answers will be stated in the opinion herein.

### Opinion.

[1, 2] The uncontradicted evidence as to speed was that the train was running some 30 to 35 miles an hour, and that such was its usual speed at that place. The fact that a passenger train was running at the rate of 30 to 35 miles an hour does not constitute negligence per se. The statute does not prescribe the speed at which trains shall be operated. McDonald v. Railway Co., 86 Tex. 7, 22 S. W. 939, 40 Am. St. Rep. 803. If the train in question was being operated at a dangerous speed at the time of the injury, it was by reason of the conditions there existing, viz., that it was a public road crossing, and that the train was partially hid by trees and brush from those who were traveling upon the public road. Railway Co. v. Rogers, 91 Tex. 56, 40 S. W. 956. We do not think that the evidence upon this point is sufficient to sustain the finding of the jury, even though it be conceded that question No. 7, was correctly answered.

The evidence shows that appellant permitted one or two small trees to grow up in its right of way, but these would not have prevented the train approaching the crossing being plainly seen from the public road. There were, however, trees growing upon the land adjoining appellant's right of way, which did, to a considerable extent, prevent the train from being seen from the public road. It cannot be said that appellant "permitted" these trees to grow at such place, for the reason that they were not upon the land of appellant, and it had no right to remove the same. Therefore we do not consider that the evidence is sufficient to sustain the jury's answer to questions Nos. 9 and 10.

[3] The reply to issue No. 13 presents a serious question. The undisputed evidence is that the engineer discovered the deceased when the engine was at a distance of about 100 yards from the crossing; that the deceased was then upon the right of way, driving his team in a trot, with the heads of the mules some 15 or 20 feet from the track, he himself being upon the spring seat, some 15 feet behind the heads of the mules. At the instant before this his team was traveling in a slow trot, but shortly after entering upon the right of way his mules increased their speed, whether because deceased urged them forward, or for some other reason, does not appear. The deceased was looking neither to the right nor to the left, but straight ahead, and the engineer realized that he would not probably stop his team before the engine arrived at the crossing. He was going upgrade to the crossing of from 4½ to 5 feet from the edge of the right of way to the crossing, and, had he at this time seen the train approaching and realized his danger, it is probable that he could have stopped his team in time to avoid the collision. From these facts it is evident that the jury concluded that, had the engineer sounded the whistle at the time he discovered the deceased, the deceased would have seen the train and stopped his team. This may or may not have been the case, depending upon whether the impulse of the deceased in such case would have been to avoid the danger by stopping his team or urging it forward so as to cross the track before the engine could reach the crossing. The undisputed evidence shows that the engineer immediately upon discovering the peril of deceased, reversed his engine, applied the emergency brakes and sanded the track, which was the proper thing to do in order to slow up the train, and all that he could do to accomplish this end. The engineer testified that upon seeing the dangerous position of deceased his instinctive impulse was to slow up the train, in order to give the de-

ceased an opportunity, if possible, to cross the track before the train reached him, feeling that this was his only recourse to save the deceased from injury. He did all that he could to slow up the train. He could not have taken means to check the speed of the train and at the same time have blown the whistle, as it required the use of both hands and immediate action in order to reduce the speed of the train. Using the necessary means to slow up the train, he had no time to blow the whistle. Had he blown the whistle, he would have had no time to use the means necessary to lessen the speed of the train. The evidence shows that he was mistaken in supposing that by using every means in his power to lessen the speed of the train the deceased would cross the track in safety. Had he blown the whistle, it is possible, and we may concede (and in deference to the findings of the jury do concede) that it is probable, that the deceased would have checked his team and thus avoided the collision; but the question is, if the engineer took such means as to a very cautious man might have seemed the most proper under the circumstances to avoid the injury, is his employer to be held responsible for his mistake? In Railway Co. v. Brooks, 132 S. W. 98, this court said:

"The principal legal question involved in this case is as to whether the deceased, in attempting to remove the hand car in order to prevent the passenger train from being wrecked, was bound to exercise that degree of care for his own safety that would be exercised by an ordinarily prudent man in the ordinary affairs of life. This question was so fully considered, and the law in such case was so clearly stated, in the able opinion by the late Chief Justice of this court in case of Railway Co. v. McVey, 81 S. W. 998, that we deem it unnecessary to do more than to refer to that case for our views on this subject. The cases cited by Judge Fisher in that case, as well as many others that we have examined, fully sustain the text of that decision. Upon the authority of that case and the numerous decisions sustaining the same, we hold that where a party has not, by his own negligence, produced the situation which endangers the lives of others, he is justifiable in exposing himself to danger which must be apparent to him as a reasonable man, in order to save the lives of such others, and that in so doing, if his conduct is not rash or reckless, he will not be guilty of contributory negligence."

The facts in this case are the reverse of those stated in the Brooks Case, supra; that is to say, the engineer was not himself endangered by reason of his alleged negligent acts, but the injury occurred to another. However, we think the principle announced in that case is applicable here. If the engineer did what to a prudent man would have seemed reasonable in order to save the life of the deceased, he being compelled to choose his line of action upon the instant and almost, as it were, by instinct, without time to reason as to the comparative safety of two methods open to him, we do not think that because the subsequent event may show that he made a mistake as to the most efficient method of avoiding the danger he was thereby guilty of negligence.

[4] The jury found that the deceased, before driving upon the crossing, did not look or listen or do any act in order to discover whether or not the train was approaching the crossing, and the evidence fully sustains this finding; but they further found, in answer to question 19, that the failure of the deceased to endeavor to discover whether or not a train was approaching the crossing did not constitute negligence upon his part. This inference of the jury from the facts found is not justifiable. The deceased had been in the habit of traveling this road from one to three times a week for thirteen years, and knew that the road crossed the railroad track at the point of collision. It does not appear that he had any reason to suppose that a train would not cross the road at that place at that time. It does not appear that he could not have seen the train, notwithstanding the timber, at some point within a reasonable distance of the crossing. His wagon was empty and was making considerable noise, which perhaps prevented his hearing the noise of the approaching train; but, had he stopped his team before entering upon the right of way and listened, it is evident that he could have heard such noise. The noise of the approaching train was heard by Wilson, who was working in the adjoining field and near the public road, at about the same time that he heard the noise of the wagon, at which time the deceased was some 40 yards from the right of way. It occurs to us that a reasonably prudent man, in approaching a railway crossing at such place as that an approaching train could not be seen, would listen for such train; and, if his wagon was making so much noise that he could not hear the noise of an approaching train, that he would be aware of this fact and would stop his team. However this may be, the undisputed evidence shows that when the deceased reached the line of the right of way, 50 feet distant from the railroad track, he could have seen the approaching train at a distance of 194 yards; and when he had advanced 15 feet further, which would still have been in time for him to have stopped his team, he could, if he had looked, have seen the approaching train at a distance of more than half a mile. The train at this time was in fact within about 100 yards of him. The collision occurred in the daytime, at about 3 p. m.

From these facts we conclude that the deceased was guilty of contributory negligence in driving upon the railroad track without looking or listening, or doing any other act in order to discover whether or not the train was approaching the crossing.

Although the appellant may have been guilty of negligence by reason of any of the facts found by the jury, if the deceased was guilty of negligence in failing to discover the approaching train, and if such negligence was a proximate cause of his injury, the appellees cannot recover, except upon the

doctrine of discovered peril. Railway Co. v. Kutac, 72 Tex. 643, 11 S. W. 127; Railway Co. v. Dean, 76 Tex. 74, 13 S. W. 45; Railway Co. v. Fuller, 5 Tex. Civ. App. 660, 24 S. W. 1091.

For the reasons stated, the judgment of the trial court is reversed, and this cause is remanded for a new trial.

Reversed and remanded.