# ROBERT HENSON v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.

### Division Two, December 3, 1923.

1. **EVIDENCE: Stopping Car: Hypothesis: Must be Based on Facts.** Where the petition charged that the motor car at the time it struck plaintiff was running twenty-five miles an hour, and the undisputed evidence offered by him is that it was running from twenty to twenty-five miles per hour, it is error to permit plaintiff to prove the distance in which it could have been stopped had it been running five, seven or twelve miles per hour. Such hypothetical questions must be predicated upon the proof in the case.

2. **NEGLIGENCE: Humanitarian Rule: Elimination of Contributory Negligence.** The plaintiff, by abandoning his charges of common-law negligence and acquiescing in the submission of his case to the jury under the humanitarian rule alone, eliminates from the case the pleaded defense of contributory negligence, and thereafter plaintiff's right to recover must be determined upon his conduct and the acts of defendant's servants at the time and place of the accident, and the conditions and surroundings as they then existed.

3. ——: ——: **Impossibility of Avoiding Accident.** Plaintiff cannot recover for his personal injuries under the humanitarian rule where his own evidence and the physical facts clearly demonstrate that it was impossible to avoid the accident after his peril was discovered and there was no lack of reasonable care to discover sooner his presence on the railroad track.

4. ——: ——: **Pedestrian on Track: Care for Own Safety.** The operator of a motor car on a railroad track has the right to as-

sume that a pedestrian walking towards the on-coming car will leave the track and avoid a collision therewith, there being nothing apparent in his manner or condition to indicate that he is oblivious to the peril.

5. ————: ————: **Discovery of Peril: Four Seconds.** Where plaintiff's evidence is that when plaintiff was first seen the motor car was within thirty to thirty-three feet from him, and that the motor car, then traveling twenty miles per hour, could not have been stopped in less than 264 feet, a verdict for him cannot be sustained on testimony conjecturing that he could have been seen on the track 120 feet away, especially where he himself testifies that it was so dark that, facing the car and walking towards it, he could not see it. A verdict cannot be based on the operator's failure to stop the car in four seconds, even if it were possible to have seen plaintiff at their beginning and to have stopped it within that time.

6. ————: ————: **Warning: Presumption of Duty.** In the absence of evidence to the contrary, the presumption of law obtains that the foreman who was operating the motor car in the night time did his duty, and gave no warning of its approach on the track on which pedestrians occasionally traveled in day light, because he had not seen plaintiff before the car struck him.

7. ————: **Walking on Railroad Track: Trespasser.** A plaintiff who, deliberately, without claim of right, license or custom, walked upon a railroad track in the night time, instead of using the near-by public highway, and continued to walk upon it between the rails, at a place where it was fenced and cattle-guards maintained, a half mile from any town, and was struck by defendant's motor car, must be held, in his action for personal injuries brought against the railroad company, to have been a trespasser within the purview of the statute (Sec. 9948, R. S. 1919); and under the evidence and circumstances of this case, such a plaintiff cannot recover.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,*
Judge.

REVERSED.

*W. F. Evans* and *Ward & Reeves* for appellant.

(1)    Defendant's instruction in the nature of a demurrer to the evidence offered at the close of plaintiff's

case should have been given. (a) To make a case under the humanitarian rule, the plaintiff must not only be in a discoverable position of peril, but this position must have been discoverable in sufficient space and time to have enabled the operator of the motor car, by the exercise of ordinary care, to have stopped the car and thereby prevented a collision with plaintiff. There was absolutely no evidence in this case that the plaintiff could have been seen by defendant's operator of the motor car in a perilous position in time to have, by the exercise of ordinary care, prevented the collision. Burge v. Railroad, 244 Mo. 96, 102; Whitesides v. Railroad, 186 Mo. App. 608; Hawkins v. Railroad, 135 Mo. App. 524; Baecker v. Railroad, 240 Mo. 507; George v. Railroad, 251 S. W. 729; Roseman v. Railroad, 251 S. W. 104; Anderson v. Davis, 251 S. W. 86; Wilson v. Flour Mill Co., 245 S. W. 206; Bibb v. Grady, 231 S. W. 1022; Murray v. Iron Co., 238 S. W. 836. (b) Plaintiff was not in a perilous position, because he could have safely stepped off the track. The operator of the car had a right to presume that plaintiff would step to one side and avoid colliding with the car. And especially is this true, since plaintiff's evidence shows that the rumbling of the motor car could have been heard a mile away and there was nothing in the appearance of plaintiff to indicate that he was oblivious to the approach of the car. He testifies he was looking to the front, that is, towards the approaching car. There was no case made under the last chance or humanitarian doctrine. State ex rel. v. Reynolds, 289 Mo. 479; Guyer v. Railroad, 174 Mo. 344; Carrier v. Railroad, 175 Mo. 470; Van Bach v. Railroad, 171 Mo. 338; Markowitz v. Railroad, 186 Mo. 358; Tannehill v. Railroad, 279 Mo. 158; Hawkins v. Railroad, 135 Mo. App. 524. (c) This case is not one which can be based upon inferences or presumptions, as to the possibility of the operator's ability to stop the car and prevent the collision. According to the undisputed testimony, if an attempt had been made as soon as plaintiff could have been discov-

301 Mo.—27.

ered on the track, the motor car would have collided with plaintiff and passed beyond him before it could have been brought to a stop. George v. Railroad, 251 S. W. 729; Brown v. Brown, 237 Mo. 662; Rashall v. Railroad, 249 Mo. 522; Hamilton v. Railroad, 250 Mo. 722; Burge v. Railroad, 244 Mo. 76; Glick v. Railroad, 57 Mo. App. 97; Whitesides v. Railroad, 186 Mo. App. 608; Justus v. Railroad, 224 S. W. 79. (d) If we assume that the plaintiff was in a position of peril at the greatest distance he could have been seen from the car, to-wit, 120 feet, it required only a little more than four seconds for the car to cover this distance to plaintiff. The space of time was entirely too short upon which to predicate a recovery under the humanitarian rule. Hawkins v. Railroad, 135 Mo. App. 534; Burge v. Railroad, 244 Mo. 101; Degonia v. Railroad, 224 Mo. 596; Anderson v. Davis, 251 S. W. 86; Markowitz v. Railroad, 186 Mo. 350; Tannehill v. Railroad, 279 Mo. 158; State ex rel. v. Reynolds, 289 Mo. 479. The cases cited under the foregoing paragraph demonstrate that the plaintiff has no case for the reason the operator of the car had not sufficient time in which to prevent the collision. (e) The evidence was not sufficient to show a general public user of the railroad track so as to require the operator of the motor car to anticipate the presence of persons on the track. The user was not such a general public user as the law requires in order to demand of the operator of trains or cars the duty to keep on the lookout for pedestrians on the track. Hamilton v. Railroad, 250 Mo. 721; Frye v. Railroad, 200 Mo. 377. (2) The verdict of the jury is contrary to the instructions of the court and under the instructions given the jury could not properly or legally find a verdict for the plaintiff. The jury ignored and refused to pass upon the sole and only question submitted to it, and necessarily went outside of and beyond the instructions of the court, and found its own verdict upon some basis other than that submitted to them by the instructions. The verdict cannot therefore stand. Barber v. McDonald, 245

S. W. 357; Brokerage Co. v. Hines, 206 Mo. App. 669; Hoagland v. Railroad, 209 S. W. 569; Payne v. Railroad, 129 Mo. 405; Shohoney v. Railroad, 223 Mo. 649.

*Atkinson, Rombauer & Hill* for respondent.

(1) "The conclusion reached was that, construed in the light of reason and our former adjudications, there was left remaining a duty to look out for persons on the track at places where by common custom, well established and known to the railway company, there was such pronounced use of the track by pedestrians as caused their presence to be naturally expected. In other words, the statute made no innovation on the general rule in that regard, and that general rule of duty, and liability for breach of it, whether relating to trespassers or licensees or *quasi*-licensees had long been recognized by this court before the Morgan Case. Since its decision it has been consistently and persistently followed." Murphy v. Railroad, 228 Mo. 84. (2) Logically, this same rule applies to a motorman as well as an engineer. Ahnefeld v. Railroad, 212 Mo. 302. (3) The following cases, some of the earliest and some of the latest of this court, disclose the uniform application made by this court of the humanitarian doctrine to facts similar to those of the case at bar: Morgan v. Wabash Ry. Co., 159 Mo. 262; Le May v. Railroad, 105 Mo. 361; Guenther v. Railroad, 95 Mo. 286; Newell v. Dickinson, 207 Mo. 378; Fiedler v. Railroad, 107 Mo. 645; Chamberlain v. Railroad, 133 Mo. 587; Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720; Fearons v. Railroad, 180 Mo. 208; Calhoun v. Schaff, 229 S. W. 277; Beard v. Railroad, 272 Mo. 172; Dalton v. Railroad, 276 Mo. 663; Ulrich v. Railroad, 252 S. W. 377; Kemp v. Railroad, 251 S. W. 402; Ruenzi v. Payne, 231 S. W. 294; Goben v. Railroad, 229 S. W. 631; Walker v. Wabash Railroad Co., 193 Mo. App. 249; Hornbuckle v. McCarty, 243 S. W. 327; Emma Fields v. Mo. Pac. Railroad Co., 240 S. W. 813. (4) "On an appeal from a judgment based on a verdict in favor of plaintiff, the

evidence will be considered in the light most favorable to plaintiff.'' Calhoun v. Schaff, 229 S. W. 277.

RAILEY, C.—This action was commenced by plaintiff, in the Circuit Court of Butler County, Missouri, on March 9, 1921, to recover damages alleged to have been sustained by him, in a collision with defendant's motor car in Scott County, Missouri, on September 21, 1920. The petition alleges that defendant, a Missouri corporation, at the dates mentioned therein, operated a line of railroad through the town of Crowder, in Scott County, Missouri, and through Butler County, in said State; that for the last ten years the space between the rails of defendant's track running from its depot in said town of Crowder, to a point more than one-half mile in a southerly direction, ''was habitually and hourly used, both day and night, by the public as a foot-path, and that said foot-path at all times ran through a populous community, all which facts, the defendant, its officers, agents, servants and employees, at all times knew, or by the exercise of ordinary care could have known''; that along said portion of said track, used as a foot-path, it was the duty of defendant and its servants in operating motor cars along said railroad, at that point, to keep a constant lookout for pedestrians on the railroad track. It is averred that on September 21, 1920, while plaintiff was walking along said foot-path, between said railroad tracks, going south from Crowder, and when about one-fourth of a mile south of same, the defendant and its servants, operating a motor car going north along said railroad track, ''negligently failed to keep a constant lookout for pedestrians upon said foot-path along said railroad track, negligently ran said motor car, at that point, at a high rate of speed, to-wit, twenty-five miles per hour, negligently ran said motor car at that time, which was night, without adequate brakes and without light or other signals or devices to warn pedestrians of its approach, negligently failed to warn plaintiff of the approach of said motor car, and negligently ran said

motor car and caused the same to collide with the plaintiff, who was in a position of peril and oblivious of his danger, and that the operators of said motor car knew or by the exercise of ordinary care could have known of the presence of the plaintiff upon said railroad track and of his peril and his obliviousness of his danger in time to have stopped the car and prevented his injury by the exercise of ordinary care, but continued to operate said car in a negligent manner as above set out, causing it to collide with plaintiff as aforesaid, thereby and thus breaking plaintiff's left leg,'' etc. After setting out plaintiff's alleged injuries, the petition concludes with a prayer for $20,000 damages.

The answer contains a general denial and plea of contributory negligence. The reply is a general denial of the new matter pleaded in the answer.

John Scholtz, a witness for plaintiff, testified, in substance, that he had lived at Chaffee for fifteen years, and had been in the service of defendant during that time, and was in its service on September 29, 1920, working in its yards at Chaffee; that he was on the motor car which collided with plaintiff; that the collision occurred about a half to a quarter of a mile below Crowder, in Scott County, Missouri; that at the time of the collision, Joe Belk, Floyd Clemons and himself were on the car; that all three were in the service of defendant; that Floyd Clemons was foreman of the crew, and was operating the car at that time; that they were running between Morehouse and Crowder, going into Chaffee; that the collision occurred between six and 6:30 p. m.; that it was just beginning to get dark; that the collision occurred on September 21, 1920; that in his opinion the track was pretty straight and level, each way from the place of collision, for about one mile; that there was a nice little path between the rails in the center of the track, padded nice, where the collision occurred; that the path ran north and south from the place of collision; that there was no light on the motor car before the collision. Over the objection of defendant, witness was permitted to testify that they had a

horn on the car; that it was not sounded at all; that "before the collision of that motor car with plaintiff I saw the plaintiff walking on the track; he was walking right straight toward us, going south"; that it looked to witness as though plaintiff was coming down the center of the track; that just as he looked at plaintiff, he thought the latter made one step to get off the track; that he started to get off, and about that time was hit. Witness further testified:

"When I saw him we were about one rail length from him, about thirty feet. I had my face kinda down a little bit; I had on a pair of these goggles; at that time the air was pretty bad about being full of bugs and grasshoppers and things of that kind, and we wore goggles to keep them out of our eyes, and I had raised my goggles and was trying to get a bug out of my eye, and I happened to look up and I saw something in the center of the track, I couldn't see what it was, couldn't tell, and then about that time we hit him. That was the first I had noticed he was there, and at that time I don't think the brakes had been applied. I figure we were going about twenty mile an hour, probably between twenty and twenty-five miles an hour. The motor car had brakes on it; it was the duty of the man operating the car to operate the brakes, too. We run about seventy-five or one hundred yards probably by him before he stopped it. I realized that we had hit a man just as soon as we hit him. Just as soon as we could stop the car, we went back up there and picked him up, the three of us, and put him on the car with us."

He said plaintiff was in the middle of the track when he first saw him; that it looked to him as though plaintiff made one step to get off the rail.

On cross-examination, witness said the accident occurred about one-half mile south of Crowder; that he and Joe Belk were carpenters and had been out doing some work for defendant; that the car was used for that purpose; that there were two seats in front and one behind: that he (witness) was sitting in front on the left-hand

side of the car; that ''Clemons [the foreman] was sitting right behind us'' and was operating the car; that he could not tell what Clemons was doing as he was behind witness; that he did not look back just before the collision, and ''do not know what Clemons was doing;'' that he thought the car was traveling from twenty to twenty-five miles per hour; that it made a lot of noise, and he thought a man could hear it a mile off; that it was a still, clear night; that he figured plaintiff would step off, and he looked like he started to step off; that ''when I first saw him we were something like thirty feet from him, about a rail's length, and I think a rail length is thirty feet or thirty-three feet.'' He said: ''I don't know whether the man behind me who was operating the car had seen him before I did or not, or whether he undertook to stop, I had my back to him. I don't know whether he put on the brakes just before we struck him''; that after striking plaintiff, the car ran about seventy-five yards, but he never stepped the distance; that while the car was running eighteen miles per hour it could be stopped in eight rail-lengths or 240 feet; that while running twenty miles per hour with the emergency brakes on it took 264 feet in which to stop the car; that he thought all the men on the car saw plaintiff about the same time; that when he first discovered plaintiff it was so dark he could hardly tell it was a man. This witness, without objection, testified as follows:

''Q. After you saw him on the track was there anything that could have been done by any of you three men to have prevented striking that man? A. No, sir.''

He testified, that he had seen people traveling on this pathway between the rails while he was going to work; that he never saw any one along there after dark; that this was the first time he ever saw anybody on the track there after dark; that the pathway looked like it had just been built; that when the car was within thirty feet of plaintiff, there was nothing that could be done to keep the car from hitting him on account of its speed; that he was facing the plaintiff and was in front of the man driving

the car; that all three of the men on the car had a clear view up the track; that he did not "think the brakes were applied until we struck the man."

On re-cross-examination witness said the man operating the car was behind him, and that he could not state as a fact that the brakes were not set until they struck plaintiff; that the car weighed about fifteen hundred pounds, and was operated by gas power.

Stephen Pratt, a witness for plaintiff, testified that he had seen people walking on defendant's track south of Crowder since the accident, but did not live at Crowder before plaintiff was injured and never saw any one on the track before that time.

Robert Henson testified in his own behalf, that he was sixty-six years old at time of trial; that he was hurt about one-half mile south of Crowder; that the last thing he remembered was that he was going south on the railroad track to Morehouse; that he was walking between the two rails, going toward Morehouse, and was about one-half mile from Crowder when hurt; that he never saw the car, nor did he hear it; that he never saw any light, and had no warning; that he was in the middle of the track before he was hit; that he did not know how the accident occurred; that he was walking in the middle of the track, had his face to the south, was looking the way he was going, and was not half asleep; that he was standing up when hit; that his face was straight in front; that he had a grip over his shoulder, and did not know how he was struck, nor what happened at that time. He testified that he was hard of hearing, but his eyesight was not very bad.

R. N. Minnert testified, in behalf of plaintiff, that he lived a half mile south of Crowder, which is a town of about two hundred people; that the railroad is used for trains to run on, and it is also used for footmen to walk on, and they do walk on it up and down there; that in his opinion there were as many as three or four people, beside the school children, who daily, except Sunday, walked along the track where plaintiff was injured; that

more people walk there on Sunday than on week days. On cross-examination he said: "I wouldn't say that this track was generally used by the public;" that the school children used it from seven to nine in the mornings and between four-thirty in the afternoon to sundown; that he "never saw anyone traveling that track after night;" that the road is fenced and cattle-guards all along same; that about five or six school children used the track; that there was a good dirt road near the railroad track.

Leonard Ward testified that the track south of Crowder, since 1908, has been used by people walking up and down "just like any other railroad track;" that he had traveled the railroad "right smart," both in the daytime and at night; that the track was used by people to walk on during the daytime and at night since 1908. On cross-examination, he said there would be an average of three or four people each day walking over this track; that there was a road which people could have traveled; that the road is fenced, with wing fences, and cattle-guards along the same; that within two miles of Crowder, on the south, there are three houses on the east side of the railroad; that on the west side, there is no house within a half mile of the track.

Nancy Gower, sister of plaintiff, testified, that his hearing was bad, but his eyesight was pretty good before he was hurt.

John Scholtz was recalled by plaintiff and, over the objections of defendant, was permitted to express his opinion as to the distance in which a car could be stopped, while running 5, 7, 12, 15, 17, 18, 20, 27.7 miles per hour.

The foregoing covers substantially all the facts in the case, except those relating to plaintiff's injuries.

The defendant offered a demurrer to the evidence, which was overruled, and it declined to offer any evidence in the case.

Such other matters, as may be deemed important, will be considered in the opinion.

The jury returned a verdict in favor of plaintiff for $7600, and judgment was entered accordingly. Defend-

ant, in due time, filed its motion for a new trial, which was overruled, and the cause appealed by it to this court.

I. Appellant complains of the trial court's ruling in permitting plaintiff, over his objection, to prove by John Scholtz the distance in which defendant's car could have been stopped, had it been running five, seven or twelve miles per hour, when the undisputed evidence offered in behalf of plaintiff disclosed, that it was running from twenty to twenty-five miles per hour. The petition also charges that said car was running, at the time of the collision with plaintiff, twenty-five miles per hour. The manifest purpose of this testimony was to get before the jury the impression that if defendant's motorman had been running slower, the accident might have been avoided. It is well settled law in this State, that hypothetical questions like those propounded to Scholtz, in order to pass muster, must be predicated upon the evidence in the case. Hence, the court erred in permitting the witness to testify as to the distance in which said car could be stopped while running five, seven, or twelve miles per hour. [11 R. C. L. sec. 11, p. 579; Russ v. Ry. Co., 112 Mo. l. c. 48; Root v. Ry. Co., 195 Mo. l. c. 377.]

*Hypothetical Question.*

II. The trial court, by instructions, eliminated from the case all the charges of negligence contained in the petition, except those relating to the humanitarian rule, and the case was submitted to the jury on this issue. Appellant contends that on the undisputed facts its demurrer to the evidence should have been sustained at the conclusion of the case. The plaintiff by abandoning his common-law charges of negligence, and having the case submitted to the jury under the humanitarian doctrine, eliminated the defendant's defense of contributory negligence. Hence, the conduct and actions of plaintiff, and defendant's foreman in charge of the car, at the time and place of accident, must be considered and determined in the light of conditions, and surroundings as they then existed. [Griffin v. St. Louis

*Avoiding Accident.*

Transfer Co., 193 S. W. (Mo.) 1. c. 809-10; McGee v. Railroad, 214 Mo. 1. c. 541, 114 S. W. 33; Grout v. Electric Ry. Co., 125 Mo. App. 1. c. 562.] As tersely stated in the last case: "The humanitarian duty deals only with the actual facts of a present condition, and has no concern with the question of what might have been done under different conditions." WILLIAMS, J., in the Griffin Case, supra, held that: "The humanitarian doctrine of negligence seizes the actual facts as they exist, and holds the defendant liable for injury resulting from failure to use the required care under the then existing conditions."

John Scholtz, who was on the seat of the motor car, in front of the foreman, testified as follows:

"I never did see anyone on this track along there at that time of night, or at any other place along there after dark. This was the first time I ever saw anybody on the track there after dark."

This same witness, after stating that plaintiff was thirty to thirty-three feet away when he first saw him, testified that "when I first discovered him it was so dark I couldn't hardly tell it was a man." The petition alleges that it was "night," and the plaintiff's evidence shows that it was so dark he could not even see so large a body as the car before it struck him, although his face was toward the car. Taking the conditions as they were shown, the car was then running from twenty to twenty-five miles per hour. In running twenty miles per hour, it moved a fraction over twenty-nine feet each second, with plaintiff still moving toward the car to shorten the distance between them. The plaintiff proved by actual experiment, with the same car, that it could not be stopped in less than 264 feet, while running twenty miles per hour. According to the testimony of Scholtz, it was a still, clear night, and this car, running as it was that night, could have been heard a mile off. He further testified that "when we were within thirty feet of this man, there wasn't anything that could be done then to stop the car to keep from hitting him, and we were going so fast that we couldn't stop then without hitting him."

The above statement of the witness is sustained by the physical facts, and plaintiff's own evidence. Taking the conditions as they existed, the car, traveling twenty miles an hour, could not be stopped in less than 264 feet. There is not a syllable of evidence in the case, either showing, or tending to prove, that plaintiff could have been seen by the foreman, if the latter had been carefully looking, a distance of even 132 feet, when it would take twice that distance in which to stop the car, and avoid a collision. The physical facts heretofore presented, when supplemented by plaintiff's own evidence, to the effect that it was so dark he could not see a 1500-pound car, with his face turned toward it, before it struck him, impels us to hold that there can be no recovery in this case, under the humanitarian rule.

(a) Even if it be conceded, in the face of the positive testimony of plaintiff to the contrary, that the foreman in charge of the car might have seen plaintiff 120 feet distant, he would have had the right to assume, that plaintiff, whose face was turned toward the on-coming car, would leave the track and avoid the collision. [Pope v. Railroad, 242 Mo. l. c. 240; Carrier v. Railroad, 175 Mo. 470.] It is useless, however, to speculate on this subject, as the car could not have been stopped in less than 264 feet, even if plaintiff had been seen by the motorman while 120 feet distant.

*Leaving Truck.*

III. The testimony of Scholtz, to the effect that in his opinion plaintiff could have been seen 120 feet away that night, does not militate against the conclusion heretofore stated. When applied to the actual conditions as they existed at the time of the accident, he said the plaintiff was thirty to thirty-three feet away when he first saw him. His mere conjecture that plaintiff might have been seen 120 feet that night is entitled to but little weight, in the face of plaintiff's positive testimony to the contrary. But let us assume that plaintiff could have been seen 120 feet away, this would not have obviated the collision, as the car

*Speculating on Distance.*

could not be stopped in less than 264 feet. Keeping in mind the fact that plaintiff and the motor car were approaching each other, even if the foreman had seen the plaintiff 120 feet away, traveling twenty miles per hour, he would only have had a fraction over four seconds to stop the car, which, by actual experiment, could not be stopped under 264 feet. With only four seconds and a fraction, in which to act, a recovery could not be sustained, based on the alleged negligence of the motorman in failing to stop the car within 120 feet, even if it had been possible to stop it in that distance. In Burge v. Railroad, 244 Mo. l. c. 101-2, and in Degonia v. Railroad, 224 Mo. l. c. 596, we held that even ten seconds were not sufficient under the circumstances of this case to avoid the collision after the car came within 120 feet of plaintiff. It needs no mathematical calculation to demonstrate that, as the car could not be stopped in less than 264 feet, as shown by actual experiment, the alleged failure of the motorman to discover plaintiff on the track 120 feet distant, could not furnish a legal basis for recovery in this case.

IV. Counsel for respondent, in their brief and abstract, say that witness Scholtz testified that "the brakes were applied after he was hit." In the printed abstract,

*Warning: Presumption of Duty.* he said he did not think the brakes were applied until they struck plaintiff, but he answered the next question, on cross-examination, as follows: "I can't state it as a fact that the brakes were not applied until we struck him." This witness also testified that the "honk" on the car was not sounded before plaintiff was struck. Conceding the above testimony to be true, in regard to the brakes and "honk," it tends to show that the foreman who was behind Scholtz on the car, never saw plaintiff before he was struck, or he would have sounded the alarm and applied the brakes. [Barker v. Ry. Co., 98 Mo. l. c. 54; Eppstein v. Ry. Co., 197 Mo. l. c. 735.]

In the Eppstein Case, while discussing a similar question, we said: "Indeed, the absence of all warning signals, by whistle or bell, would indicate to us, as a charitable view, that they did not see him.".

The motorman was not a witness in the case, and no one saw him before the accident. Scholtz, was sitting in the front seat of the car, and Clemons, the foreman, was sitting in the seat behind him. Scholtz testified that he had his back to Clemons, did not look back, and could not tell what he was doing before the collision. In the absence of evidence upon the subject, the presumption of law obtains that Clemons did his duty and gave no warning because he had not seen the plaintiff before the collision. [Woolridge v. LaCross Lumber Co., 291 Mo. l. c. 247, 236 S. W. l. c. 297; State v. McNeal, 237 S. W. (Mo.) l. c. 741, and cases cited.]

V. Section 9948, Revised Statutes 1919, among other things, provides that: "If any person not connected with or employed upon the railroad shall walk upon the track or tracks thereof, except where the same
Trespasser.    shall be laid across or along a publicly traveled road or street, or at any crossing, as hereinbefore provided, and shall receive harm on account thereof, such person shall be deemed to have committed a trespass in so walking upon said track in any action brought by him on account of such harm against the corporation owning such railroad, but not otherwise."

The plaintiff in this case brought himself within the purview of this statute, when he deliberately, without any claim of right, license or custom, walked down the railroad track, instead of using the public highway, and continued down this track, between the rails, at night, at a place where the track was fenced, and cattle-guards maintained, a quarter or half mile from any town, and continued this journey until he met the defendant's car which could be heard for a mile, and was knocked off the track.

VI. At the time and place of the accident the plaintiff, under the above statute, was a trespasser upon de-

Henson v. Railroad Company.

fendant's track. The road was fenced, and cattle-guards constructed where he was injured. It did not occur at a public crossing, nor within the limits of any city or town. He was in the country, a half mile from town, and walking between the rails, instead of using the adjoining highway.

**Recovery Barred by Own Acts.**

According to the contention of his counsel, he was defective in hearing, and had none too good eyesight. He was making a foot-path of defendant's track, without any authority of law and without even a claim that he was using the same because other trespassers did so. Under the above conditions at night, as alleged in petition, he met an on-coming motor car, making so much noise it could be heard for a mile, and asserts that, with his face toward the car, he was not aware of its presence until struck by same. In the daytime, according to his testimony, he could see a man one-half mile away, and a motor car, a distance of two miles. If his testimony be accepted as true, it must be on the theory that he was prevented from seeing the car on account of darkness, and yet he claims that defendant's crew, who had no knowledge that the track was being used after night-fall by trespassers, should have known of his peril, under the circumstances aforesaid, regardless of the darkness, in time to have saved him from collision and injury, while he was more than 264 feet away. We have been referred to no case, where a recovery has been sustained in this court, on such facts as are presented here, under the humanitarian rule, or otherwise.

Upon the plainest principles of right and justice, we hold that plaintiff was the architect of his own misfortune, and has no standing in court under the humanitarian doctrine.

The judgment below is accordingly reversed without remanding. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.