Ruth Dodd, Administratrix of the Estate of James C. Dodd, Deceased, v. Missouri-Kansas-Texas Railroad Company, a. Corporation, Appellant.—No. 39047.—184 S. W. (2d) 454.

Division Two, January 2, 1945.

*Haysler A. Poague* and *Carl S. Hoffman* for appellant.

*Charles A. Calvird, Crouch & Crouch, Cowgill & Popham* and *Sam Mandell* for respondent.

BARRETT, C.—James C. Dodd was employed by the Missouri-Kansas-Texas Railroad as a signal maintainer. As he traveled from Windsor to Clinton an extra freight train overtook and ran into the motorcar he was operating. At the time he was engaged in interstate commerce and for his death his widow, as the administratrix of his estate, recovered a judgment of $18,000.00 under the Federal Employers' Liability Act.

The engineer testified that as the freight train traveled south at a speed of forty, forty-three or forty-four miles an hour his view of the tracks was obstructed by the superstructure of a highway underpass then in process of construction. As the engine passed the superstructure the engineer looked to the right and left on Highway 52 for approaching traffic and then saw Dodd about two telegraph pole lengths or 300 feet south of the intersection of Highway 52 and the tracks traveling at a speed of about fifteen miles an hour. Dodd was leaning over with his back to the train and there was never any indication that he was aware of its approach. After the collision Dodd's body was found in the vicinity of the sixth telegraph pole or 897 feet south of the overhead crossing and there was some indication that the motorcar was about 800 feet south of the crossing when it was struck. Between the time the engineer saw Dodd and the engine struck the motorcar (800 feet) the speed of the train had been reduced to thirty, thirty-eight or forty miles an hour.

In urging that its demurrers should have been sustained the railroad does not contend that Dodd, by reason of his employment, assumed the risk of injury under the circumstances or that there was no duty on the part of the train crew to maintain a lookout. Chesapeake & Ohio Ry. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914. The engineer was looking and saw Dodd when he was 800 feet away,

unaware of the train's approach, and if thereafter the engineer could have stopped the train or slackened its speed to fifteen miles an hour it was his duty to do so and failing he would be negligent and the danger of injury would not then be assumed by Dodd as a risk ordinarily incident to his employment. Thomson v. Downey, 78 Fed. (2d) 487. The railroad does not contend that Dodd was not oblivious, that he was not in peril or that he was aware of the train's approach and had the last clear chance to take one step to safety. Deere v. Southern Pac. Co., 123 Fed. (2d) 438.

The railroad's position is that its demurrers should have been sustained because there was no substantial evidence that it failed to exercise due care to avoid the injury after Dodd was actually discovered in peril. The basis of its contention in this respect is that Mrs. Dodd called as her witness the engineer, Spendiff, and it is urged that she is conclusively bound by his testimony that after he saw Dodd on the track he applied the air in emergency, closed off the steam, sanded the track and did everything humanly possible to avoid a collision but despite his utmost efforts was unable, under the circumstances, to stop the train or slacken its speed in time to avoid striking the motorcar. Of course, if there had been no other witnesses and no other testimony but that of the engineer, the railroad's contention, of necessity, would have to be sustained. Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. (2d) 626; Central Vermont Ry. v. Sullivan, 86 Fed. (2d) 171. But in this case the respondent, in addition to the engineer, called as witnesses two former railroad engineers as experts and in answer to hypothetical questions they testified that the train could have been stopped or its speed slackened to fifteen miles an hour in time to have avoided striking the motorcar. The respondent, therefore, was not in the ▮▮▮ position of having called but a single adverse witness to prove a material fact. Orlann v. Laederich, 338 Mo. 783, 92 S. W. (2d) 190. Since there were two other witnesses and consequently other evidence from which the jury could find that the engineer could have avoided the collision "Plaintiff was not bound by the engineer's testimony, in so far as it was contradicted by evidence of other witnesses. The jury was at liberty to believe part of the engineer's testimony and disbelieve any part that conflicted with plaintiff's other evidence." McCall v. Thompson, 348 Mo. 795, 801, 155 S. W. (2d) 161, 164; Klotsch v. P. F. Collier & Son, 349 Mo. 40, 49, 159 S. W. (2d) 589, 594; Summa v. Morgan Real Estate Co., 350 Mo. 205, 215, 165 S. W. (2d) 390, 394.

To obviate the force and effect of the testimony of the expert witnesses it is urged that the court erred in permitting them to answer the hypothetical questions because the questions were not predicated on the evidence. The questions assumed an 842 Mikado type engine, twenty-two cars with eighteen empty, dry rails substantially level with a differentiation of about one per cent grade, a slight curve,

Westinghouse air brakes carrying eighty pounds pressure, a speed of forty to forty-two miles an hour and safety to the train and its passengers. Under the assumed circumstances the witnesses said that the train could have been slowed to fifteen miles an hour in 700 feet and stopped in 1000 feet. It is now objected that in the questions the speed of the train was assumed at a lower rate than the evidence showed; that no allowance was made for reaction time for the engineer or action time for the brakes, that the grade of the tracks was assumed at one per cent and the equipment in perfect condition. But aside from the fact that there was an evidential basis for all the assumptions and more than 800 feet in which to slacken the speed of the train and 1000 feet in which to stop the following occurred after the questions had been stated: "Mr. Poague: . . . I object to that question as not embodying all the elements present under the evidence adduced. Mr. Popham: If counsel will point out anything that ought to be included I will put it in. The Court: Yes, if there is anything omitted and you can call specific attention to it." Counsel did not thereafter say what elements were missing or not supported by the evidence and no other or further objection was made except that the questions did not present issues raised by the pleadings and that the witnesses were not qualified to answer the questions. In this situation "It is the duty of counsel, objecting to a hypothetical question on the ground that it assumes facts not in evidence or that it omits facts shown in evidence, to point out what matters not in evidence are assumed in and what matters in evidence are omitted from such question. Failing to do this, the trial court is fully justified in overruling the objection." Scheipers v. Missouri Pac. R. Co. (Mo.), 298 S. W. 51, 54. Here, obviously, there were no specific objections which the court overruled as in Burge v. Wabash R. Co., 244 Mo. 76, 148 S. W. 925. It is not claimed here that there were no facts whatever upon which the experts could base an opinion as in Frank v. Greenhall, 340 Mo. 1228, 105 S. W. (2d) 929. Here incidents and circumstances of which there was no evidential foundation whatever were not included in the questions as was the case in Russ v. Wabash Western Ry. Co., 112 Mo. 45, 20 S. W. 472 and Henson v. St. Louis-S. F. Ry. Co., 301 Mo. 415, 256 S. W. 771.

Under this state of facts the case, on its merits, is almost identical with Moran v. Atchison, T. & S. F. Ry. Co., 330 Mo. 278, 48 S. W. (2d) 881. There a signal maintainer was struck by a passenger train as he endeavored to remove a motorcar from the track. The engineer and fireman saw Moran as the train rounded a curve 700 feet away. The speed of the train was forty to forty-five miles an hour. Moran had his back to the train. The weather was clear and the tracks were dry. Experts testified that the train could have been stopped in 600 feet. It was there held that "whether or not the en-

gineer by exercising ordinary care, could have avoided the accident by stopping the train or checking the speed thereof, was, under the evidence, a jury question.'' It follows that the railroad's demurrers were properly overruled.

█ The respondent plead that the railroad had negligently furnished Mr. Dodd a "sight" which did not give him full and correct information regarding the location and movement of trains before he left Windsor on the motorcar. It was claimed that the information given did not notify him of the train in question. However, by specific instruction, the court withdrew that assignment of negligence from the jury's consideration. Nevertheless, at the █ instance of the respondent, the court instructed the jury that while the matter of "sight" was not submitted for their consideration as a ground of recovery yet the evidence relating to "sight" was not entirely withdrawn from the case. And the jury were told that they might consider the evidence relating to "sight" in passing on the railroad's contention that Dodd was guilty of negligence which was the sole cause of the accident or of negligence which contributed to his injury and death which would diminish the amount respondent might recover. It is urged by the appellant that the court erred in thus instructing the jury. It is argued that the given instruction conflicts with the withdrawal instruction in that the jury were once told that "sight" was withdrawn from their consideration as a ground of recovery. It is urged that the instructions conflict because one told the jury that the railroad was not negligent in respect to "sight" and another that the jury might consider "sight." It seems to us there could be no question but that the evidence relating to "sight" had some bearing on whether Dodd alone (solely) was negligent or whether he was contributorily negligent. As a matter of fact appellant's counsel argued the matter of "sight" and urged upon the jury that Dodd had violated the company's rules with respect to obtaining a proper and timely "sight" and was, therefore, negligent. But in any event with these issues in the case, Dodd's sole and contributory negligence, the jury could properly consider the evidence relating to "sight" and there would be no conflict in telling the jury that they might not consider the railroad's conduct with respect to "sight" in determining whether it was negligent but that they might consider such evidence in determining whether Dodd was solely or contributorily negligent. State ex rel. Thompson v. Shain, 349 Mo. 1075, 1087, 163 S. W. (2d) 967, 975; Benton v. Thompson (Mo. App.), 156 S. W. (2d) 739.

█ The railroad urges that the trial court erred in refusing to grant a new trial because of the prejudicial argument of respondent's counsel. During the closing argument the following statements and objections were made:

"No man can say Jim Dodd was guilty of any negligence on earth. This man, hard of hearing and having to keep his eyes on the rails ahead, couldn't ride backwards and look for this train; he had a right to act on what this company had done; he was unaware of the approach of this train. Put yourselves in his place, run into from the rear, *stabbed in the back and killed in cold blood* by an engineer who could have stopped.

Mr. Poague: I object to that as improper argument. Ask the jury be discharged.

The Court: Overruled. (Exception.)

Mr. Popham: He argued about putting them in the place of the other man. I guess one is as fair as the other. I am answering him."

The argument which Mr. Popham said he was answering was the following:

"Mr. Poague: Let me ask you this question—let me ask you, fairness, what you think about this: Here was an engineer driving this train, he had been in service for many years, he sees a man ahead of him on a handcar. Do any of you men think that that man didn't do everything that he possibly could? Put yourselves in his place. What, in Heaven's name, do you think that man did other than everything that he could do? That is a serious question; it is a common sense question and it is a question for you gentlemen to dwell over. Just ask yourselves that question: 'I am in that engineer's place, I have been running an engine quite a while, I see a man ahead of me.' Why, you know you are going to do everything that you can, and you know that this man did everything he could. They haven't testified— there is no evidence before this jury that he didn't. The only thing they complain about is that the train didn't stop quicker than it actually stopped. Well, that is a physical fact. All right."

Of course, there was no evidence that Mr. Dodd had been "stabbed in the back." He was "run over from the rear." He was "killed" and from the viewpoint of the respondent he was "killed by an engineer who could have stopped." But however negligent the engineer may have been there is no evidence whatever that he had "killed in cold blood," which in common parlance means a wilful, deliberate felonious homicide. State v. Wieners, 66 Mo. 1, 25. It is argued that the metaphor "stabbed in the back" is but a mere oratorical flight, that since the President employed the phrase (The President, in fact, said: "On this tenth day of June, 1940, the hand that held the dagger has struck it into the back of its neighbor.") it is now recognized and accepted as a colloquialism which merely implies "unfriendly" and "unexpected." The words in both instances, in their context, speak for themselves. The whole phrase "stabbed in the back and killed in cold blood" was not such language as would tend to "aid the jury in a dispassionate consideration of the case." On the contrary such extravagant, reckless language could only have a

tendency to arouse hostility, resentment, aversion and prejudice. Monroe v. Chicago & A. R. Co., 297 Mo. 633, 249 S. W. 644; Jackman v. St. Louis & H. Ry. Co. (Mo. App.), 206 S. W. 244. The language and its implication is much stronger than the argument recently condemned by the court en banc in Walsh v. Terminal R. Ass'n. of St. Louis, 353 Mo. 458, 182 S. W. (2d) 607, 611-612.

This is not to place counsel in a "straight jacket" (Paul v. Dunham (Mo. App.), 214 S. W. 263), nor ban "oratorical conceit and flourish." Bishop v. Brittain Inv. Co., 229 Mo. 699, 129 S. W. 668. But the argument in the instant case cannot be classified as mere "oratorical conceit and ·flourish" and it does not come within the limitations of acceptable and proper argument which we have no intention of modifying. Evans v. Town of Trenton, 112 Mo. 390, 399-400, 20 S. W. 614, 616; Hancock v. K. C. Terminal Ry. Co., 339 Mo. 1237, 100 S. W. (2d) 570. Contrasting the argument of appellant's counsel and that of respondent's counsel it is apparent that the argument complained of was not in retaliation of improper argument or of any other argument that warranted severe retort or reprisal. Jones v. Kansas City (Mo.), 76 S. W. (2d) 340. The trial judge is permitted some discretion in restraining argument and in passing on its effect when he rules on a motion for a new trial. Aly v. Terminal R. Ass'n. of St. Louis, 342 Mo. 1116, 119 S. W. (2d) 363. But even so when argument is improper and especially when it is inflammatory the trial court should take the proper and necessary action to insure the removal of its prejudicial effect. Rytersky v. O'Brine, 335 Mo. 22, 70 S. W. (2d) 538; Carpenter v. Kurn, 345 Mo. 877, 136 S. W. (2d) 997; Monroe v. Chicago & A. R. Co., supra.

It is urged, however, that the appellant's objection "I object to that as improper argument. Ask the jury be discharged" did not sufficiently and properly call the matter to the trial court's attention or preserve the question for review. There was other improper argument by respondent's lawyers but, as they say, the objections "note an exception" and similar remarks are not the proper manner in which to compel action by the court. Evans v. Town of Trenton, supra; Randol v. Kline's, Inc., 330 Mo. 343, 49 S. W. (2d) 112. Compare Stroud v. Doe Run Lead Co. (Mo. App.), 272 S. W. 1080. And in a case in which the argument complained of was not inflammatory but was as to a matter not in evidence the objection "I object to that as not being proper argument, and I ask Mr. Kelley be reprimanded" was held to be too general to predicate error on the action of the court in overruling the objection. Ternetz v. St. Louis Lime & Cement Co. (Mo.), 252 S. W. 65, 71. But when an argument is obviously "improper," such as "and when they have violated the law and as a result of that violation the mangled forms of citizens is strewn upon their tracks," the objection "We object to that argument as not proper argument" or "We except to that argument as improper

and not legitimate argument and ask the court to rule upon it?" is sufficient to call for action by the court, though the objection may be said to be general. Monroe v. Chicago & A. R. Co., supra; Davis v. F. M. Stamper Co., 347 Mo. 761, 773, 148 S. W. (2d) 765, 770; 64 C. J., sec. 303, p. 284.

Because of the improper and prejudicial argument the judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.